IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–00153–KMT

JOSHUA EMIL RICHARDS,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

      This case comes before the court on review of the Commissioner's denial of Plaintiff

Joshua Emil Richards' application for Supplemental Security Income ("SSI") pursuant to Titles

XVI of the Social Security Act ("the Act").  Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff filed his Opening Brief on June 11, 2015 (Doc. No. 17 [Opening Br.]), Defendant filed

her Response Brief on July 10, 2015 (Doc. No. 18 [Resp. Br]), and Plaintiff filed his Reply Brief

on July 27, 2015 (Doc. No. 19 [Reply Br.]).

## BACKGROUND

      Plaintiff seeks SSI for an alleged disability beginning in July 2011.  (*See* Opening Br. at

6.)  Following a hearing, the Administrative Law Judge ("ALJ") found Plaintiff had failed to

establish that he was disabled, as defined by the Act, at any time after July 30, 2011.

(Administrative Record [AR] at 26).

The ALJ found Plaintiff was not disabled under the Act.  (AR at 11-23).  As relevant here, the ALJ ruled that Plaintiff retained the residual functional capacity ("RFC") to perform medium exertional work but was limited to routine, simple, and repetitive tasks with a maximum specific vocational preparation ("SVP") of 2, occasional interaction with coworkers, supervisors, and the public, and few changes in the routine work setting.  (AR at 15.)  Based on the vocational expert's testimony, the ALJ found Plaintiff could perform work existing in significant numbers in the national economy.  (AR at 22-23.)

The Appeals Council denied Plaintiff's request for review (AR at 1-6), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 422.210(a).  Plaintiff timely sought review by this Court.

## STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.    The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.    The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.    The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.    If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.    If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d

at 1196.  It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  However, the court may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Thompson*, 987 F.2d at 1487.

The court may not affirm an ALJ's decision based on a *post-hoc* rationale supplied in an appellate brief, since doing so would "usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.2004).  Although the Tenth Circuit has applied the doctrine of harmless error in administrative appeals, it is only appropriate where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145.

## ANALYSIS

Plaintiff argues that (1) the ALJ failed to discharge her duty to fully develop all relevant evidence; (2) the ALJ failed to apply the proper rules/procedures of law when weighing medical evidence; (3) the ALJ failed to determine Plaintiff's mental residual functional capacity ("RFC"); (4) the ALJ failed to meet her Step 5 burden as to jobs in significant numbers within Plaintiff's RFC; and (5) the ALJ's behavior, especially regarding the consultant examination ("CE"), raises

at least the appearance of impropriety, bias, and prejudice to the degree that the Decision is invalid.  (*See* Opening Br.)

### 1.  *Duty to Fully Develop All Relevant Evidence*

#### A.  *Therapist Cooper*

Plaintiff argues that the ALJ failed to make any effort to determine the relationship of Therapist Cooper to the plaintiff and thus improperly discounted Therapist Cooper's opinions. (Opening Br. at 21.)

In the ALJ's Decision, she notes that she has considered the work limitations identified by Therapist Cooper but that

> Ms. Cooper's relationship to the claimant is not clear.  It appears that she has not actually treated the claimant, as her name does not appear on any clinic note in the file.  No evidence indicates that Ms. Cooper examined the claimant, provided counseling, or prescribed medications.  Because Ms. Cooper does not appear to have actually examined the claimant or provided mental health treatment, her assessment is entitled to less weight.

(AR at 20 [citations to medical records omitted].)

"The ALJ has a duty to fully and fairly develop the record as to material issues." *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).  Under 20 C.F.R. § 404.1512(e), the ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled."  *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).  "Put another way, when the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue." *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir.2005)).

At the time the ALJ issued the Decision, she had received office records from the Larimer Center for Mental Health where Therapist Cooper worked.  Included in the initial records from Larimer Center from Mental Health is a record dated June 9, 2011, in which Therapist Cooper notes that Plaintiff was referred for substance and abuse treatment and that he "needs to continue his medications and that he may have to deal with this for the rest of his life." (AR at 349-50.)  The other records are "Diagnosis – Multiaxial Assessment" reports dated June 9, October 10, December 21, 2011, and June 1, 2012, in which Therapist Cooper notes Plaintiff "was given a diagnosis of Schizophrenia residual type due to him having symptoms that include hallucinations and paranoid delusions but they are not prominent.  He was also given a diagnosis of Cannabis dependence due to client use on a daily basis."  (AR at 391-400 & 428-33.)  These records do not reflect that Therapist Cooper examined Plaintiff and thus do not contradict the ALJ's determination regarding Therapist Cooper's relationship with the plaintiff.

Nevertheless, in the Disability Field Report submitted to Defendant on November 1, 2011, Plaintiff identified Therapist Cooper as a health care provider who had treated him from May 27, 2010, through September 15, 2011, and that he was scheduled to continue to see her on a monthly basis.  (AR at 235.)  An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of a hearing.  *See generally* 20 C.F.R. § 404.944; *Baker v. Bowen*, 886 F.2d 289, 291–92 (10th Cir. 1989).  Here, the ALJ made no effort to obtain any additional records from Therapist Cooper.  However, Plaintiff ultimately secured the relevant records and provided them to the Appeals Council for review.  The Appeals Council specifically considered the records, but concluded that they did not establish a basis for changing the ALJ's decision.  This circuit has held that, when the Appeals

Council denies review, the ALJ's decision becomes the Commissioner's final decision that is reviewed for substantial evidence. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The record to be considered on review, however, includes all of the evidence before the Appeals Council, including new evidence that was not before the ALJ. *Id.* at 859.

Plaintiff argues that "[t]he Appeals Council ignored this void-filling evidence without explanation, reason or rationale even though it mandated great weight be given to Therapist Cooper's RFC as a matter of law." (Opening Br. at 26.)  This is false.  In reviewing Plaintiff's appeal, the Appeals Council stated it "considered the reasons [Plaintiff] disagree[s] with the decision and the additional evidence listed on the enclosed Order of Appeals Council." (AR at 1.)  The additional evidence included the records from Therapist Cooper. (*See* AR at 5.)  The Appeals Council concluded, however, that "this information does not provide a basis for changing the [ALJ's] decision." (AR at 2.)  The court finds that the Appeals Council adequately considered the records from Therapist Cooper. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006) (concluding that even though the Appeals Council did not specifically discuss certain treatment records that the claimant had submitted as additional evidence, it adequately demonstrated consideration of those records by stating that it had "considered . . . the additional evidence identified on the attached Order of the Appeals Council," which described the treatment records at issue, and that "neither the contentions nor the additional evidence provide a basis for changing the Administrative Law Judge's decision"); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1172–73 (10th Cir. 2005) ("Plaintiff complains that the Appeals Council's reference to the state proceeding was perfunctory—the Appeals Council wrote only that it had considered the additional evidence submitted 'but concluded that neither the contentions nor the additional

evidence provides a basis for changing the Administrative Law Judge's decision.' Yet, our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter. We reject this claim of error.") (internal citations omitted).

### B. Therapist Diamond

Plaintiff argues that the ALJ should have made efforts to obtain an RFC for Plaintiff from Therapist Diamond. (Opening Br. at 26.) Plaintiff has not identified how obtaining an RFC would have changed the outcome of the case.

There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); *see also* 20 C.F.R. §§ 404.1546(c) and 416.946(c). The Tenth Circuit has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; *see, e.g.*, *Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009) (upholding ALJ's findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297, 302–03 (10th Cir. 1988) (holding ALJ properly made mental RFC findings without expert medical assistance). Thus, this argument fails.

### C.  Authors of October 25, 2011 Letter and Dr. Shtulman

Plaintiff also argues that the ALJ should have recontacted the authors of an October 25, 2011 letter and Dr. Shtulman.  (Opening Br. at 29-31.)

Under 20 C.F.R. § 404.1520b(c), an ALJ may recontact a medical provider if there is "insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled."  The regulation specifically states that an ALJ may recontact a treating physician or take other steps listed in the regulation, but the regulation does not impose a requirement on the ALJ to take any of the listed actions.  20 C.F.R. § 404.1520b(c).

The ALJ gave the October 25, 2011 letter less weight because it "did not specifically discuss the claimant's symptoms and functioning during the relevant period from July 2011 through the present."  (AR at 22.)  Plaintiff argues the ALJ should have contacted the authors to inquire about her concerns about Plaintiff's "distant past history" and his "current situation." (Opening Br. at 27.)

Though the ALJ gave the October 25, 2011 letter little weight, she noted that

A review of treatment records during the relevant period [July 2011 through the present] show that the claimant's psychological condition is currently much more stable and well controlled than is described in [the October 25, 2011 letter].  The practitioners emphasized that the claimant had been hospitalized three times during the last nine years due to his psychiatric conditions.  While this statement is accurate, treatment records show that the claimant has not required a psychiatric hospitalization since 2005.  Rather, he improved significantly with medication and maintained substantial gainful employment for several years from 2006 through 2011.  The claimant's practitioners observed that he had significant problems at work, arguing with bosses, quitting work before being laid off, and struggling to maintain a job.  This statement is inconsistent with the claimant's ability to maintain substantial gainful employment with one employer from 2006 through 2011.

(AR at 22.)

Dr. Shtulman, a licensed psychologist, examined Plaintiff and provided a report at Defendant's request.  (*See* AR at 409-14.)  The ALJ accepted and gave "greater weight" to the report as being consistent with the medical evidence as a whole but did not give significant weight to Dr. Shtulman's global assessment of functioning (GAF) assessment of 35 because it was not consistent with the treating medical records and does not provide useful guidance about Plaintiff's vocationally relevant limitations.[1] (AR at 22.)

Here, the ALJ found no ambiguity or inconsistency in the totality of the medical evidence, and thus recontacting the authors of the October 25, 2011 letter and Dr. Shtulman was unnecessary.  Because ALJs have discretion as to whether to recontact a medical source, the ALJ did not err when she failed to recontact these medical providers.

### 2.  *Weighing Evidence*

The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, *i.e.,* is to be accorded "controlling weight," on the matter to which it relates.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2),

---

[1] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lee v. Barnhart,* 117 F. App'x 674, 678 (10th Cir. 2004) (internal citations omitted).

416.927(d)(2).  If the opinion is deficient in either of these respects, it is not to be given controlling weight.

Finding such deficiencies to resolve the controlling-weight question against a claimant does not end the inquiry, however.  Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.  *Watkins*, 350 F.3d at 1300–01. If this is not done, a remand is required. *Id.* at 1301.  As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4 (emphasis added).  Thus, a deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry.  *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis").  This second inquiry is governed by six factors to be considered by the ALJ:  (1) the examining relationship between the physician and the applicant; (2) the length, nature, and extent of their treatment relationship; (3) the strength of the evidence supporting the opinion; (4) the

consistency of the opinion with the record as a whole; (5) the physician's specialty; and (6) any other factors, such as the physician's familiarity with disability programs and the extent of his familiarity with other information in the record, that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ need not discuss each individual factor. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks, internal brackets, and citation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1120 (internal citation omitted). Consistency with the record as a whole is a legitimate basis for determining the weight to be afforded an opinion. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."); *see also* 20 C.F.R. § 416.927 ("[W]e consider the following factors in deciding the weight we give to any medical opinion . . . . (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

### A.  October 25, 2011 Letter

Plaintiff argues that the ALJ improperly weighed the opinion of Dr. Whitley in the October 25, 2011 letter.

The ALJ considered Dr. Whitley and the other treating mental health practitioners' letter to the extent they opined that Plaintiff's auditory and visual hallucinations and paranoid delusions limited Plaintiff's functioning, especially in regard to social skills and maintaining relationships in the work place.  (AR at 20.)  The ALJ also considered the practitioners' opinion that Plaintiff "struggles to maintain a professional and stable relationship with authority figures due to miscommunication and misunderstanding about his diagnosis."  (*Id.*) (Internal quotation omitted.)  The ALJ "accept[ed] this portion of the narrative report and limits the claimant to occasional interaction with co-workers, supervisors, and the public."  (*Id.*)  Consistent with this statement, in the RFC, the ALJ determined Plaintiff "can tolerate occasional interaction with coworkers, supervisors, and the public and can tolerate few changes in a routine work setting."  (*Id.* at 15.)  This decision is "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight."  *Langley*, 373 F.3d at 1120.

The ALJ gave "less weight" to the remainder of the letter because it appeared to focus heavily on Plaintiff's history, rather than the relevant time period beginning in 2011; because Plaintiff's records demonstrated that he was psychologically stable during the relevant time period; and because the letter was inconsistent with Plaintiff's past work history.  (AR at 21.) The court rejects Plaintiff's argument that the ALJ's use of the term "little weight" is legally inadequate.  In context, it is clear that the term was meant to convey the ALJ's assessment that this portion of the letter was not entitled to controlling weight.  The ALJ's opinion was "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight."  *Langley*, 373 F.3d at 1120.

Any imprecision in her language is plainly harmless in light of the opinion as a whole. *See Williams v. Chater*, 64 F.3d 670, —, 1995 WL 490280, at *2 (10th Cir. 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal"); *Bernal v. Bowen*, 851 F.2d 297, 302 (10th Cir. 1988) (where ALJ's opinion is otherwise amply supported by the record, error which does not prejudice claimant will not warrant remand).

The relevant time period in this case begins in July 2011, when Plaintiff alleges he became disabled. (AR at 152.) The ALJ reasonably observed that the letter focuses heavily on Plaintiff's past. Over two pages of the letter discuss Plaintiff's medical and psychiatric history as far back as 2002. (*Id.* at 279-81.) Plaintiff is correct that the ALJ also opined about Plaintiff's current functioning; however, it was nevertheless reasonable for the ALJ to consider as one factor the fact that the letter focused heavily on Plaintiff's past. *Cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1215-16 (10th Cir. 2004) (medical evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the relevant time period).

Moreover, as the ALJ observed, Plaintiff's current treatment records showed that Plaintiff was psychologically stable. (*See* AR at 21.) *See* 20 C.F.R. § 416.927(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence). For example, in April 2011, shortly before Plaintiff quit working, Dr. Whitely noted that Plaintiff was able to work and was functioning well on his medications. (AR at 335.). On June 21, 2011, Plaintiff admitted to Dr. Whitley that he did not always take his medication, and Dr. Whitley observed that Plaintiff was functioning

less well as he was not taking antipsychotic medications regularly.  (*Id.* at 378.)  However, after

Plaintiff resumed taking his medications regularly, his symptoms and mental status improved

significantly.  At his next visit in September 2011, Plaintiff had a stable mood, good energy and

motivation, good sleep and appetite, no psychotic or manic symptoms, and no suicidal thoughts.

(*Id.* at 375.)  In November 2011, Dr. Whitley observed that Plaintiff had good energy and

motivation, no psychotic symptoms, no suicidal or homicidal ideation, and intact memory and

concentration (*Id.* at 283.)  Similarly, Therapist Diamond, who took over Plaintiff's medication

management from Dr. Whitely, reported a normal mood, no paranoid thoughts, intact

concentration and memory, and occasional hallucinations.  (*Id.* at  421, 424, 436.)  The ALJ also

noted that the statement in the letter that Plaintiff struggled with bosses and coworkers was not

inconsistent with Plaintiff's work history, which showed he was able to maintain substantial

gainful employment from the same employer from 2006 through 2011.  (*Id.* at 21.)

Finally, the ALJ noted that the letter opined Plaintiff had significant physical limitations.

(*Id.* at 21.)  The ALJ gave no weight to their assessment of Plaintiff's physical impairments

because they did not treat his physical condition, which was outside their areas of practice.  (*Id.*)

Indeed, mental health professionals are not qualified to opine about Plaintiff's physical

limitations.  *See Miller v. Astrue*, 496 F. App'x 853, 859 (10th Cir. 2012) (psychologist was not

qualified to render an opinion about a physical impairment).  Although Dr. Whitley is a medical

doctor, she treated only Plaintiff's psychiatric impairments, not his physical impairments.  *See* 20

C.F.R. § 416.927(c)(2)(ii) (stating an ALJ must consider whether the source has provided

treatment for the impairment in question).

After reviewing the record, the court concludes that the ALJ's decision to give less weight to the letter insofar as it addressed opinions as to issues other than Plaintiff's social limitations.

### B. Therapist Cooper

Plaintiff argues that the ALJ erred in giving Therapist Cooper's opinions "less weight" because her relationship to the plaintiff was not clear in the records provided to her.  (Opening Br. at 31.)  Plaintiff argues this is a euphemism for "zero weight."  (*Id.*)

Again, in context, it is clear that the ALJ determined Therapist Cooper's assessment was not entitled to controlling weight.  The ALJ noted

> When Ms. Cooper described the claimant's clinical findings, she focused primarily on his mental status evaluation on one date, February 21, 2013.  On that date, the claimant exhibited circumstantial thought processes and reported auditory and visual hallucinations and paranoia.  However, Ms. Diamond, the claimant's treating source, expressed concerns about whether he was being compliant with medication and observed that he should have run out of many of them.  Thus, the claimant's increased symptoms and abnormal presentation on February 21, 2013, may be a result of noncompliance with medication, and do not represent his typical functioning on medication.  As such, it would be inaccurate to focus on the claimant's presentation on that one date.  Furthermore, the previous two years' [ ] treatment notes show that when he takes his medication as prescribed, his mental status is unremarkable and he does not experience psychotic symptoms.  Accordingly, the work limitations assessed by Ms. Cooper are not consistent with the weight of the medical evidence.

The reasons cited by the ALJ in support of her decision to afford less than controlling weight to Therapist Cooper's opinion all are legitimate and find adequate support in the record.[2]

---

[2] To the extent the ALJ did not know the extent of Therapist Cooper's relationship with Plaintiff, the court has already addressed the issue *supra*.

### C. Dr. Shtulman

Dr. Shtulman, a licensed psychologist, examined Plaintiff and provided a report at the Defendant's request.  (*See* AR at 409-14.)  The ALJ accepted and gave "greater weight" to the report as being consistent with the medical evidence as a whole but did not give significant weight to Dr. Shtulman's GAF assessment of 35 because it was not consistent with the treating medical records and does not provide useful guidance about Plaintiff's vocationally relevant limitations.  (AR at 22.)

"'While a GAF score may be of considerable help to the ALJ in formulating the RFC . . . , it is not essential to the RFC's accuracy' and taken alone does not establish an impairment serious enough to preclude an ability to work."  *Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).  In *Drummond v. Astrue*, 895 F. Supp. 2d 1117, 1130-1132 (D. Kan. 2012), the court reviewed a number of recent cases from this circuit concerning the extent to which an ALJ must consider or discuss a claimant's GAF score.  From this survey, the court distilled the principle that "GAF scores do not directly correlate to the severity criteria used by the Social Security Administration" and thus "a GAF score without a narrative explanation from the source of the score is of little value in determining the severity of the claimant's impairments or the limitations resulting from his  impairments."  *Id.* at 1132.  The court further explained that "the better and more thorough the narrative explanation given for the GAF score, the greater the consideration it must be given, and the greater the need for discussion in the decision."  *Id.*  Moreover, where a GAF score is inconsistent with the ALJ's findings, "that inconsistency must be resolved."  *Id.*

Here, the ALJ determined that Dr. Shtulman's GAF assessment of 35 was not entitled to great weight because it was not consistent with the treating medical records and does not provide useful guidance about Plaintiff's vocationally relevant limitations.  (AR at 21.)  Plaintiff's GAF score was assessed in a consultative examination by an acceptable medical source.  *See* 20 C.F.R. § 416.927(a)(2).  It was submitted to the ALJ in the context of a six-page report containing a thorough narrative explanation of Plaintiff's medical history, diagnosis, and prognosis, which identified Plaintiff's functional limitations.  (*See* AR at 409-414.)  Dr. Shtulman opined as to impairments that would appear to be within the social and occupational sphere.  (*Id.* at 410.)  In that regard, she found Plaintiff demonstrated some paranoid ideation and delusional thought process. (*Id.* at 208.)  She also noted that Plaintiff displayed significant limitations with adaptation functioning and occupational ability.  (*Id.* at 413.)  Though the ALJ noted some of these findings, she did not cite to evidence in the record that contradicts Dr. Shtulman's opinion that Plaintiff has a GAF of 35.  Given that a GAF score of 35 signifies "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child beats up younger children, is defiant at home, and is failing at school)," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012), the court cannot conclude that the failure to address this aspect of Dr. Shtulman's opinion was harmless error.  *Allen*, 357 F.3d at 1142.  Furthermore, to the extent that the score is inconsistent with the ALJ's findings, that inconsistency must be resolved.  *See Drummond*, 895 F. Supp. 2d at 1132.

### D.  Dr. Wanstrath

Finally, Plaintiff argues that the ALJ erred in giving the opinion of Dr. Wanstrath, a non-examining physician opinion, more than minimal weight.  (Opening Brief at 29-31.)

Dr. Wanstrath is a DDS psychologist.  (AR at 19.)  The ALJ noted that Dr. Wanstrath is not a treating medical source and did not examine the claimant.  (*Id.*)  Nevertheless, the ALJ gave substantial weight to Dr. Wanstrath's opinion that Plaintiff can "perform work that did not involve significant complexity or judgment and that requires up to three months to learn.  Dr. Wanstrath opined that the claimant cannot work closely with the public, supervisors, or co-workers; but can accept supervision and relate to co-workers if contact is not frequent or prolonged."  (AR at 20.)

In concluding that Plaintiff was not disabled, the ALJ, however, failed to provide any explanation for giving this non-treating source opinion substantial weight other than to state that "[t]he medical evidence as a whole supports Dr. Wanstrath's opinion."  (*Id.*)  The ALJ did not address Dr. Shtulman's opinions regarding occupational limitations, including her conclusions that Plaintiff "had mild limitations in his ability to sustain concentration and perform at a consistent pace," "displayed marked difficulties with insight and abstract reasoning," and "marked limitations in his ability to request assistance, accept instructions of criticism, and get along with coworkers."  (*Id.* at 412-13.)  An ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).  The court cannot assess whether these unaddressed conclusions

are consistent with the summary opinion that Plaintiff can "perform work that did not involve significant complexity or judgment and that requires up to three months to learn."

## CONCLUSION

The ALJ's failures to adequately to support the conclusions at step four regarding Dr. Shtulman and Dr. Wanstrath require this case be remanded for additional proceedings.  The court, therefore, will not address Plaintiff's remaining arguments, because the ALJ's analysis on remand may impact how these other opinions in the record are viewed.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner for rehearing in accordance with this Order.  It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 25th day of March, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge